UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN M. KETNER and FORGEDALE TRADING, LLC, | : : | |
| Plaintiffs, | : : | |
| v. | : : | No. 5:20-cv-6360 |
| GREGORY S. WIDELL, ROBINSON DELAWARE HOLDINGS, INC. d/b/a ROBINSON TECHNICAL PRODUCTS CORPORATION, INWELD CORPORATION, and ROBINSON TECHNICAL PRODUCTS, INC., | : : : : : : : | |
| Defendants. | : | |

# **O P I N I O N**

**Defendants' Motion to Dismiss Plaintiffs' Complaint, ECF No. 10—GRANTED, in part**

**Joseph F. Leeson, Jr.**                                                                                      **July 6, 2021**
**United States District Judge**

## I.    INTRODUCTION

This case involves claims arising out of a business venture between Plaintiff John Ketner and Defendant Gregory Widell. The parties created a company to develop and sell a product line of welding equipment. Ketner alleges, among other things, that Widell violated the federal Racketeer Influenced and Corrupt Organizations ("RICO") statute by diverting funds from their joint venture into his personal accounts. Plaintiffs filed suit in this Court by invoking jurisdiction under both 28 U.S.C. § 1331 and 28 U.S.C. § 1332. Defendants now move to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).

II. BACKGROUND

A. Facts Alleged in the Complaint[1]

In 2011, Plaintiff Ketner discussed pursuing a joint business venture to develop a new product line of welding equipment with Defendant Widell and Widell's business partner Timothy Cachia. Compl., ECF No. 1., ¶ 28. Specifically, they discussed the development and sale of a product line of tools, safety equipment, and other welding related supplies under the name "Coplay Norstar" ("CN") which, at the time, was merely a brand name and had no formal corporate existence. *Id.* ¶ 31. Ketner, Widell, and Cachia agreed that Inweld, the public face of an umbrella entity owned by Mr. Widell and Mr. Cachia on a 50-50 basis, would oversee CN. *Id.* ¶ 29.

In 2013, Ketner began working with Inweld to develop the CN product line. To do this, Mr. Ketner began traveling abroad to source and develop the CN product line. *Id.* ¶ 33. Later that year, Inweld began marketing and selling products under the Coplay Norstar designation. *Id.* ¶ 34.

Several years later, a formal agreement was drafted which established that ownership of CN would be split equally between Ketner's corporation, Forgedale Trading, LLC ("Forgedale"), and Widell's corporation, Robinson Delaware Holdings, Inc. ("RHD"). *Id.* ¶ 39. This agreement provided that Ketner would be the manager of CN and was granted "all powers necessary to carry on the ordinary, everyday business of [CN]," that business being described as "[t]he

---

[1] These allegations are accepted as true, with all reasonable inferences drawn in Plaintiffs' favor. *See Lundy v. Monroe Cty. Dist. Attorney's Office*, No. 3:17-CV-2255, 2017 WL 9362911, at *1 (M.D. Pa. Dec. 11, 2017), *report and recommendation adopted*, 2018 WL 2219033 (M.D. Pa. May 15, 2018). However, neither conclusory assertions nor legal contentions need be considered by the Court in determining the viability of Plaintiffs' claims. *See Brown v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, No. 1:19-CV-1190, 2019 WL 7281928, at *2 (M.D. Pa. Dec. 27, 2019).

manufacture and wholesale distribution of products for the welding industry including welding machines, plasma machines, clamps, hand tools, helmets, gas apparatus, carts, hand tools, and other items used in the welding industry." *Id.* ¶ 40.

From its creation, Inweld maintained much of CN's back-office operations including serving as a conduit for payment for CN products. *Id.* ¶ 44. Ketner alleges that CN's finances were clouded by the fact that Widell and Cachia were taking "consulting fees" from CN's revenues without segregating on Inweld's balance sheet what portion of those fees was related to work for Inweld and what portion was related to work for CN. *Id.* ¶ 45. Ketner further alleges that CN's finances were also clouded by Inweld's operation of MasterWeld which also included line charges for Widell and Cachia's consulting fees, fees that were never apportioned among Inweld, MasterWeld, and CN. *Id.* ¶ 46.

Ketner alleges that he repeatedly insisted on transparency from Inweld and Widell about the accounting for CN's operations, however Widell was not forthcoming with details and was generally non-responsive to Ketner's inquires. *Id.* ¶ 48. Moreover, Ketner states that his corporation, Forgedale, which owned 50% of CN, was entitled to distributions under the parties' agreement. *Id.* ¶ 50. Still, absent an accounting of what funds Inweld believed it was due for its back-office support operation, Forgedale could not know whether CN was profitable and whether a distribution was due. *Id.* ¶ 52.

In response to Ketner's repeated inquiries, Widell gave Ketner a $20,000.00 payment from the entity which owned the real estate in Coplay, Pennsylvania on which Inweld's and CN's Pennsylvania operations were located. *Id.* ¶ 50. This was to be the only distribution made relative to Forgedale's interest in CN, although the payment did not come from CN and was not made payable to Forgedale—it was made payable to Ketner. *Id.*

3
070621

Through 2016 and most of 2017, Ketner acted in his capacity as manager of CN collecting his salary and receiving reimbursement for his expenses. *Id*. ¶ 51. Throughout this period, Widell would not permit Ketner to review CN's finances. *Id.* ¶ 52. Other than knowing how much goods cost and how much was deemed to be CN's profit, Ketner was unaware what Inweld's costs were to operate CN including the cost of Widell and Cachia's consulting fees. *Id.*

Ketner did know what products cost to procure and at what price they were being sold. *Id.* ¶ 54. Ketner contends that the margins were high enough across the product line that, after applying reasonable operating expenses, there should have been significant profits. *Id.* Even so, CN was merely breaking even, and no distributions were being made. *Id.* Widell continued to refuse to provide Ketner with any information regarding Inweld's expenses to operate CN. *Id.* ¶ 55. Several times, Mr. Ketner, both in his individual capacity and in his capacity as the sole member of Forgedale, demanded to meet with Widell and RDH regarding Ketner's compensation, but such demands were refused. *Id.* ¶ 59.

On October 23, 2019, Widell presented Ketner with a letter on Inweld letterhead stating it was terminating Ketner's employment with Inweld. *Id.* ¶ 62. The same letter advised Ketner that RDH would also be terminating the 2015 Agreement. *Id.* Ketner alleges that since October 2019, Inweld has commandeered the CN business and its inventory which is housed in Inweld warehouses in Coplay, Pennsylvania, Houston, Texas, and Oakland, California. *Id*. ¶ 64. Additionally, Ketner alleges that Inweld has rebranded Coplay Norstar products under the brands ArcUnion, Fahrenheit, and others, bringing products into the United States market which were previously sold under the CN mark. *Id.* ¶ 65. Inweld has also bought CN products under the CN name, including $65,000.00 of welding products with Weihai Maxpower Group, a long-term CN supplier. *Id.* ¶ 66. Inweld also continues to sell welding products under the CN name. *Id.* ¶ 68.

B.  **Procedural Background**

On December 18, 2020, Ketner and Forgedale Trading, LLC commenced suit with the filing of the Complaint against Defendants Gregory Windell, Coplay Norstar, LLC, Inweld Corporation, Robinson Delaware Holdings, Inc. d/b/a Robinson Technical Products Corporation, and Robinson Technical Products, Inc. *See* ECF No. 1. On February 19, 2021, Defendants moved to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief could be granted and for lack of subject matter jurisdiction. *See* ECF No. 10. On April 8, 20201, this Court dismissed the complaint, without prejudice pursuant to Federal Rule of Civil Procedure 4(m) as to Defendant Coplay Norstar, LLC, for Plaintiffs' failure to timely file proof of service. *See* ECF No. 19.

III. **LEGAL STANDARDS & APPLICABLE LAW**

A.  **Motions to Dismiss Under Rule 12(b)(6) – Legal Standard[2]**

Under Rule 12(b)(6), a court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting

---

[2] The Third Circuit explained as follows regarding the proper mechanism for making determinations of "standing" to assert a civil RICO claims: "While we have designated section 1964(c) as the 'standing' provision of RICO, *see Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 520–21 (3d Cir. 1998), we point out that our method of analysis in prior cases has been to consider issues of RICO and antitrust standing in the context of reviewing motions to dismiss pursuant to Rule 12(b)(6), despite the fact that the 'injury to business or property' and proximate causation requirements are considered aspects of the plaintiff's 'standing' to sue under section 1964(c) of RICO . . . ." *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000). The Court therefore limits its analysis of Plaintiffs' "standing" under RICO to a review of the relevant allegations under the Rule 12(b)(6) standard.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Importantly, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* As the Supreme Court has observed, "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The defendant bears the burden of showing that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Additionally, "a document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted).

B. **RICO Standing – Legal Principles**

Before the Court considers the sufficiency of a plaintiff's RICO claims under 18 U.S.C. § 1962, it must address the threshold question of the adequacy of the pleadings as they relate to RICO standing under § 1964(c). *See Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 520–21 (3d Cir. 1998) (explaining that § 1964(c) sets forth the "standing requirement" applicable to suits brought under RICO). To bring a civil RICO claim, a plaintiff must allege two statutory elements to confer standing: (1) that she suffered an injury to her "business or

6
070621

property"; and (2) that her injury was proximately caused by the defendants' violation of § 1962. 18 U.S.C. § 1964(c); *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 482–83 (3d Cir. 2000).

The Third Circuit has explained that an injury to business or property requires "a concrete financial loss and not mere injury to a valuable intangible property interest." *Maio*, 221 F.3d at 483; *see Interfaith Cmty. Org. v. Honeywell Int'l*, 399 F.3d 248, 254 (3d Cir. 2005) (explaining that in order to have standing, a plaintiff must first demonstrate with particularity that she has suffered a concrete injury-in-fact); *cf. Anjelino v. New York Times Co.*, 200 F.3d 73, 88 (3d Cir. 1999) ("Courts assess whether a party has established injury-in-fact, causation, and redressability by considering whether the alleged injury falls within the 'zone of interests' that the statute or constitutional provision at issue was designed to protect . . . ."). The injury alleged must "be an ascertainable out-of-pocket loss." *FL Receivables Trust v. Bagga*, Civ. A. No. 03–5108, 2005 WL 563535, at *3 (E.D. Pa. March 8, 2005) (citing *Maio*, 221 F.3d at 483–84); *see also Walter v. Palisades Collection*, LLC, 480 F. Supp. 2d 797, 804 (E.D. Pa. 2007) (finding that injury to business or property requirement may be satisfied by allegations of actual monetary loss, i.e., an out-of-pocket loss). Equally important, "an injury that is speculative or contingent on future events does not confer RICO standing." *FL Receivables Trust*, 2005 WL 563535, at *4 (citing *Maio*, 221 F.3d at 495).[3]

---

[3] It is well-established that injuries to goodwill and reputation are not only speculative but are simply not the types of injuries compensable under RICO. *Knit With v. Knitting Fever, Inc.*, CIV.A. 08–4221, 2012 WL 2938992, at *10 (E.D. Pa. July 19, 2012) (citing *Advanced Oral Techs., LLC v. Nutres Research, Inc.*, No. Civ.A. 105303, 2011 WL 198029, at *7 (D.N.J. Jan. 20, 2011)); *see also Maio*, 221 F.3d at 483 (holding that allegations of damage to such "intangible property interest[s]" are insufficient as a matter of law); *Hamm v. Rhone–Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 954 (8th Cir. 1999) ("Damage to reputation is generally considered personal injury and thus is not an injury to 'business or property' within the meaning of 18 U.S.C. § 1964(c)."); *Parker v. Learn Skills Corp.*, 530 F. Supp. 2d 661, 678 (D. Del. 2008) ("Claimed losses to 'goodwill' and 'business reputation,' in addition to being highly speculative,

Section 1964(c) also requires that a plaintiff plausibly allege that his injury was proximately caused by the defendant's violation of § 1962. 18 U.S.C. § 1964. To state a civil claim under RICO, the plaintiff must allege that a RICO predicate offense "not only was a 'but for' cause of his injury, but was the proximate cause as well." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (citing *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)). Thus, "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006); *see also Hemi*, 559 U.S. at 9 (citing *Holmes*, 503 U.S. at 268 (holding that proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged")). A link that is "too remote," "purely contingent," or "indirec[t]" is insufficient. *Hemi*, 559 U.S. at 9 (citing *Holmes*, 503 U.S. at 268).

"[T]o make a determination about proximate causation, the court considers three factors: (1) the directness of the injury; (2) the ease of apportioning damages among other plaintiffs affected by the alleged violation; and (3) the possibility that others, more directly injured, could vindicate the claim." *Schrager v. Aldana*, 542 F. App'x 101, 103–04 (3d Cir. 2013). The Third Circuit has explained that "[t]he more difficult it is to distinguish between the effects of the defendants' legitimate activities and their alleged racketeering actions on the plaintiffs, the more likely we are to conclude that proximate causation is lacking." *Callahan v. A.E.V., Inc.*, 182 F.3d 237, 263 (3d Cir. 1999).

It is well established that "[i]ndirect or derivative harms to a shareholder do not confer RICO standing." *Penn Mont Securities v. Frucher*, 502 F. Supp. 2d 443, 466-67 (E.D. Pa.

---

are not the type of to "goodwill and reputation are not only speculative, but are simply not the types of injuries compensable under RICO.")

2007).[4] Whether a suit is derivative or direct "is drawn from the face of the complaint." *In re SemCrude, L.P.*, 796 F.3d 310, 317 (3d Cir. 2015). To determine whether a suit is derivative the court must determine "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or any other remedy (the corporation or the stockholders, individually)." *Penn Mont Securities*, 502 F. Supp. 2d at 458 (quoting *Tooley v. Donaldson, Lufkin & Jenrette*, 845 A.2d 1031, 1033 (Del. 2004)).

    C.    **RICO *Prima Facie* Case – Legal Principles**

Although RICO provides several different types of claims for civil liability, the following elements are common to all RICO causes of action: (1) a pattern of racketeering activity, (2) a culpable person, (3) an enterprise, (4) the requisite mental state, and (5) an effect on interstate commerce. *See Agency Holding Corp. v. Malley-Duff & Assocs.*, Inc., 483 U.S. 143, 154 (1987). Additionally, where a RICO claim is grounded in fraud the plaintiff must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b), requiring that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). *See, e.g., State Farm Mut. Auto. Ins. Co. v. Ficchi*, No. CIV.A. 10-555, 2011 WL 2313203, at *4 (E.D. Pa. June 13, 2011).

    1.    *Pattern of Racketeering Activities*

RICO broadly defines "racketeering activity" to include the gcarrying out one of the many predicate acts listed in the statute 18 U.S.C. § 1961(1). A single predicate act of racketeering is not enough to impose RICO liability. Instead, a plaintiff must plead and prove a

---

[4]    *See e.g., Amos v. Franklin Fin. Servs. Corp.*, No. 1:CV-10-1285, 2011 WL 5903875, at *6 (M.D. Pa. Nov. 22, 2011) (dismissing RICO claims by shareholders for want of causation upon finding their injuries were derivative of harm to corporate entity), *aff'd* 509 Fed. Appx. 165 (3d Cir. 2013); *Penn Mont Securities v. Frucher*, 502 F. Supp. 2d 443, 466-67 (E.D. Pa. 2007) ("Indirect or derivative harms to a shareholder do not confer RICO standing.").

"pattern" of predicate acts. *Id.* These predicate acts form the basis of any RICO claim and include various fraud-related offenses and other federal and state crimes, such as bribery, counterfeiting, money laundering, gambling, obstructing justice, murder, kidnapping, robbery, and extortion. *Id.* Notably, a plaintiff need not demonstrate that the RICO defendant was convicted of the predicate act to prevail on a RICO claim. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 488-93 (1985) ("[R]acketeering activity consists not of acts for which the defendant has been convicted, but of acts for which he could be.").

RICO requires a plaintiff to show that the defendant committed at least two predicate acts of racketeering in a ten-year period. 18 U.S.C. § 1961(5). As the United States Supreme Court has explained, "Section 1961(5) concerns only the minimum number of predicates necessary to establish a pattern; and it assumes that there is something to a RICO pattern beyond simply the number of predicate acts involved." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237-39 (1989). Thus, a plaintiff must show that the racketeering activity or predicate acts were more than "sporadic." *Id.* A plaintiff can establish a pattern of racketeering by showing that the predicate acts are related and pose or amount to a threat of continued criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).[5]

---

[5] To establish the predicate acts are related a plaintiff can try to demonstrate either closed-ended continuity or open-ended continuity. Closed-ended continuity requires the plaintiff to show a series of related predicate acts extending over a substantial period of time. When determining whether a time period is "substantial," courts typically tend to be conservative. *See Tabas v. Tabas*, 47 F.3d 1280, 1294 (3d Cir. 1995); *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1413 (3d Cir. 1991). Open-ended continuity requires the plaintiff to show, based on the nature of the enterprise and predicate acts alleged, that there was a threat of continuing criminal activity extending indefinitely into the future. The threat must extend beyond the period when the predicate acts were performed. *See Tabas*, 47 F.3d at 1295.

## 2. Culpable Person

RICO requires a plaintiff to identify a culpable person who violated or conspired to violate the statute. RICO defines a "person" as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). For purposes of a RICO claim, an individual or a corporation can qualify as a culpable person. *See Cedric Kushner Promotions, Ltd. V. King,* 533 U.S. 158, 159 (2001).

## 3. Enterprise

The RICO statute defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A court assessing whether a plaintiff has demonstrated the existence of an enterprise typically looks at whether the alleged enterprise: (1) constitutes an association-in-fact enterprise, and (2) is a distinct, separate entity from the culpable person. *Id.*

The Supreme Court has explained that "an association-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Boyle v. United States*, 556 U.S. 938, 944-46 (2009) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). *See also, Irish v. Ferguson*, 970 F. Supp. 2d 317, 344 (M.D. Pa. 2013). To assert an alleged enterprise constitutes an association-in-fact enterprise, a plaintiff must allege three things: (1) a group of persons associated together for a common purpose; (2) a relationship among those associated with the enterprise; and (3) longevity sufficient to permit those associated with the enterprise to pursue the enterprise's purpose. *Boyle*, 556 U.S. at 944-46.

#### 4. *Mental State*

To prevail on a RICO claim, a plaintiff generally must show that each defendant possessed the required mental state to commit the underlying predicate offense. 18 U.S.C. § 1962. This typically means that each defendant intended to engage in the predicate acts, with actual knowledge that the conduct was illegal. *See e.g.*, *Walters v. McMahen*, 684 F.3d 435, 440-41 (4th Cir. 2012); *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1293 (11th Cir. 2010).

#### 5. *Effect on Interstate Commerce*

Finally, a RICO claim must have some nexus to or otherwise affect interstate or foreign commerce. *See* 18 U.S.C. § 1962. The statute requires that the activity of the enterprise, rather than each predicate act of racketeering, have some effect on interstate commerce. *Chambers Dev. Co. v. Browning-Ferris Indus.*, 590 F. Supp. 1528, 1535 (W.D. Pa. 1984). Courts have held that "nexus of the enterprise to interstate or foreign commerce, albeit minimal must be shown." *Id.* (citing *United States v. Rone*, 598 F.2d 564, 573 (9th Cir.1979), *cert. denied* 445 U.S. 946 (1980)).

### IV. ANALYSIS

#### A. **Plaintiffs have failed to sufficiently allege proximate causation; they have failed to establish standing to pursue civil RICO claims as a result**

"When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza*, 547 U.S. at 461. The United States Supreme Court has explained that "[a] central element of proximate cause is showing some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). *See also Penn Mont Securities*, 502 F. Supp. 2d at 467 ("This Court has already ruled that these injuries are derivative or otherwise non-actionable . . . . Under this same analysis, these injuries do not confer standing

on [Plaintiff] PennMont for any of its RICO claims because there is no proximate cause.");
*Lakonia Mgmt. Ltd. v. Meriwether*, 106 F. Supp. 2d 540, 550 (S.D.N.Y. 2000) (characterizing "direct/derivative dichotomy as an issue of proximate cause" in the civil RICO context). As a court in this district has explained, "[i]ndirect or derivative harms to a shareholder do not confer RICO standing." *Penn Mont Securities*, 502 F. Supp. 2d at 466-67. *See also Amos v. Franklin Fin. Servs. Corp.*, No. 1:CV-10-1285, 2011 WL 5903875, at *1 (M.D. Pa. Nov. 22, 2011) (dismissing RICO claims by shareholders for want of causation upon finding their injuries were derivative of harm to corporate entity), *aff'd*, 509 F. App'x 165 (3d Cir. 2013).

To determine whether a claim brought by a shareholder is derivative, this court must determine "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or any other remedy (the corporation or the stockholders, individually)." *Penn Mont Securities*, 502 F. Supp. 2d at 458 (quoting *Tooley*, 845 A.2d at 1033). "When the victim of a RICO violation is a corporation, and the shareholder indirectly suffers harm from the corporate injury, proximate cause is not met."[6] *McCoy-McMahon v. Godlove*, No. 08-CV-05989, 2011 WL 4820185, at *13 (E.D. Pa. Sept. 30, 2011).

---

[6] In *Penn Mont Securities v. Frucher*, the district court explained that the Plaintiff's allegation of share dilution in the absence of a controlling shareholder describes a derivative injury, as dilution of Plaintiff's shares results from an injury to the corporation. *See* 502 F. Supp. 2d at 466-67. Under a proximate causation analysis, assuming dilution resulted from a RICO violation, defendants' RICO violation caused an injury to the corporation, which then injured Plaintiff. *Id.* The court held that the necessary middle step between the RICO violation and the harm to Plaintiff—the injury to the corporation—precludes a finding of proximate causation because the harm is too attenuated. *See id.* at 467. Therefore, a derivative injury to a shareholder also fails to satisfy the proximate cause requirement under RICO. *Id.* ("[Plaintiff's] injuries do not confer standing on PennMont for any of its RICO claims because there is no proximate cause.")

13
070621

Plaintiffs argue their injury stems from partial ownership of CN. Specifically, Plaintiffs state that their injury resulted from the Defendants "diverting . . . funds away from CN." Plaintiff's Resp. to Defendant's Mot., ECF No. 17, at 12. Plaintiffs also contend that the Defendants purposefully failed to disclose financial information to them. They explain that the alleged harm arises because "Forgedale owns 50% of CN and, in turn, Mr. Ketner owns 100% of Forgedale. As such, Forgedale would be entitled to 50% of CN's profits and, in turn, Mr. Ketner would be entitled to 100% of the profits accruing to Forgedale." *Id.* Simply put, Plaintiffs allege that Defendants diverted funds from CN, and as a result, they did not receive their full share of CN's profits.

For the reasons set forth below, Plaintiffs' allegations—whether related to either (1) Plaintiffs' derivative shareholder harm or (2) Defendants' alleged misrepresentations and failure to disclose financial information—are insufficient to establish RICO standing.

First, Plaintiffs' alleged injury is the diversion of funds from CN, a harm against the corporation. The harm the Plaintiffs are claiming—that they did not receive the proper amount of monetary returns because money was being improperly taken out of CN—is derivative of the direct harm to CN. For these reasons, the Plaintiffs' harm is derivative shareholder harm which does not establish standing for a civil RICO claim. *See Penn Mont Sec.*, 502 F. Supp. 2d at 466–67 ("Indirect or derivative harms to a shareholder plaintiff do not confer RICO standing." (citing *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 933–34 (3d Cir. 1999))). *See also John L. Motley Associates, Inc. v. Rumbaugh*, 104 B.R. 683, 687 (E.D. Pa. 1989) ("There is no independent shareholder standing to assert RICO claims where the harm to the shareholders is derivative of the harm to the corporation."); *Irish*, 970 F. Supp. 2d at 348 ("A plaintiff must suffer a direct injury in order to have RICO standing.").

14
070621

Second, Plaintiffs seek to "sidestep" the harm requirement by basing their allegations on the argument that the Defendant's failure to disclose information was a harm in itself. The Third Circuit has held that a plaintiff who lacks standing cannot "sidestep" the harm requirement by "stating a RICO claim merely by framing their allegations [of harm] as misrepresentations and the failure to disclose information." *In re Sunrise Sec. Litig.*, 916 F.2d 874, 883 (3d Cir. 1990). The court explained that "[t]o hold otherwise would eviscerate RICO's standing requirement of injury to plaintiff's business or property."[7] *Id.*

For the reasons outlined above, Plaintiffs have failed to plead sufficient facts to establish standing to pursue their RICO claims.

### B. Plaintiffs have failed to allege sufficient facts to establish a pattern of racketeering activities

"A common thread running throughout § 1962 is that an injured party must demonstrate that the defendant was engaged in a 'pattern of racketeering activity.'" *Tabas*, 47 F.3d at 1289-90. The United States Supreme Court has stated that the heart of a RICO claim is this pattern of racketeering activity. *See Agency Holding Corp.*, Inc., 483 U.S. at 154. RICO defines "racketeering activity" to include carrying out one of the many predicate acts listed in the statute. 18 U.S.C. § 1961(1).

In their Complaint, Plaintiffs allege the Defendants engaged in a pattern of racketeering activities by committing "criminal violations of 18 Pa. C.S.A. § 4104 (fraudulent records and

---

[7] In *In re Sunrise Sec. Litig.*, the Third Circuit applied this standard in a case involving shareholders who brought a RICO claim and alleged that defendants failed to disclose true financial conditions. The Court held that shareholders lack standing to sue under RICO for diminution in value of stock based on allegations that defendants failed to disclose true financial condition to shareholders. 916 F.2d at 883 (citing *Leach v. F.D.I.C.,* 860 F.2d 1266, 1274 (5th Cir. 1988)). The court explained that when the Plaintiff alleges an injury based on failure to disclose true financial conditions to shareholders, the shareholders have not alleged as individuals any legally cognizable injury. *Id.*

financial statements); 18 Pa. C.S.A. § 4107 (fraudulent business practices); 18 Pa. C.S.A. § 306 (complicity); 18 Pa. C.S.A. § 3903 (theft); 18 Pa. C.S.A. § 3922 (theft by deception); 18 Pa. C.S.A. § 911 (engaging in a pattern of racketeering and conspiracy to engage in a pattern of racketeering); 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1961 (c) and (d) (racketeer influenced and corrupt organizations)." Compl. ¶ 123. However, Plaintiffs do not support these legal conclusions with any factual allegations, let alone allegations that are sufficiently particular to satisfy the heightened pleading standard applicable to RICO claims sounding in fraud. [8] *See Sarpolis v. Tereshko*, 26 F. Supp. 3d 407, 420 (E.D. Pa. 2014) (explaining that under the Rule 9 heightened pleading standard, "[a] plaintiff must describe 'the circumstances of the alleged fraud with precise allegations of date, time, or place' or otherwise use 'some means of injecting precision and some measure of substantiation into their allegations of fraud'" (quoting *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.,* 296 F.3d 164, 172 n.10 (3d Cir. 2002))), *aff'd*, 625 F. App'x 594 (3d Cir. 2016).

Therefore, even if Plaintiffs were able to establish standing to assert their civil RICO claims, Plaintiffs' inability to sufficiently plead a pattern of racketeering activities would doom those claims.

## V. CONCLUSION

The Third Circuit has expressly stated that it "will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims." *Kolar v. Preferred Real Est. Invs., Inc.*, 361 F. App'x 354, 364 (3d Cir. 2010) (citing *Flip Mortgage Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988)); *see also Annulli v. Panikkar*, 200 F.3d 189, 200 (3d Cir.

---

[8] To sufficiently plead allegations of fraud a Plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

1999) ("[T]heft by deception, like a simple breach of contract or intentional interference with contract, is not a predicate act of racketeering activity enumerated in § 1961(1). . . . We will not read language into § 1961 to federalize every state tort, contract, and criminal law action."). In this case, Plaintiffs have failed to sufficiently establish proximate causation because they have only alleged a derivative shareholder harm. Additionally, Plaintiffs fail to allege sufficient facts to establish a pattern of racketeering activities. For these reasons, the Plaintiffs have failed to allege enough to transform their ordinary business and fraud dispute into a federal RICO action.

Defendants' motion to dismiss Plaintiffs' Complaint is therefore granted, in part, as set forth herein. Plaintiffs' RICO claims are dismissed with leave to amend.[9] The Court declines to examine the sufficiency of Plaintiffs' remaining claims until the viability of any amended RICO claims is assessed.[10]

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[9] Should they choose to file an Amended Complaint re-pleading RICO claims, Plaintiffs are directed to (1) explicitly state which subsection of § 1962 those claims are brought under—*i.e.*, which theory/theories of RICO liability Plaintiffs claims are premised on; as well as (2) ensure that the Amended Complaint contains all relevant factual allegations and legal claims, as the Amended Complaint will supersede the initial Complaint.

[10] If Plaintiffs are unable to plead viable RICO claims, there will be no basis for federal question jurisdiction.